IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
DEC 12 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) **4:19CR01013 AGF/NCC** |
| TAMMY FOX, | ) |
| Defendant. | ) |

**INDICTMENT**

**THE GRAND JURY CHARGES:**

**COUNTS 1 - 2**
**WIRE FRAUD**

A. INTRODUCTION

At all times relevant to the Indictment:

1. Explosive Professionals Midwest, Incorporated, also known as ExPro Midwest, provides de-slagging services for coal power plants using strategically placed explosives to remove mineral deposits which have built up around the boiler area at coal plants. ExPro Midwest is located in the St. Louis, Missouri area.

2. Beginning during in or about 2009, the defendant, **TAMMY FOX,** (hereinafter referred to as "**FOX**"), was the Office Manager for ExPro Midwest. **FOX** was responsible for overseeing ExPro Midwest's internal company financial activities, including accounts receivable, accounts payable, and payroll. **FOX** was also responsible for managing the company's bank accounts held at Citizen's National Bank and performing monthly reconciliations on the company's bank account statements. Additionally, **FOX** was responsible for coordinating with ExPro Midwest's outside accounting firm, Griffin, Delaney, Hillman & Lett, located in Ashland, Kentucky. **FOX** sent internal ExPro Midwest QuickBooks financial records which she prepared to Griffin, Delaney, Hillman & Lett on a monthly basis via electronic mail in order for that

accounting firm to prepare ExPro Midwest's financial statements and tax forms. **FOX** was also responsible for reviewing and paying the ExPro Midwest monthly American Express corporate credit card bills.

B. SCHEME TO DEFRAUD

3. Beginning in or about January, 2011 and continuing through in or about February, 2018, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, the defendant,

**TAMMY FOX,**

devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from ExPro Midwest, in an approximate amount of $420,000, by means of materially false and fraudulent pretenses, representations, and promises.

4. It was a part of the scheme that, on one and more occasions, defendant **FOX**, without the knowledge and authority of ExPro Midwest and its owners, issued checks to herself written on the ExPro Midwest operating bank account held at Citizens National Bank. Without authority, defendant **FOX** forged the signature of one of the owners of ExPro Midwest to purportedly "sign" those checks on behalf of ExPro Midwest, and deposited those funds into her own personal bank account.

5. As part of her scheme, defendant **FOX** issued approximately 215 ExPro Midwest checks to herself, without the authority and knowledge of ExPro Midwest and its owners, depositing each of those checks into her own personal bank account. The total amount of those unauthorized checks was approximately $370,219.30. Defendant **FOX** then used those unauthorized funds for her own personal use, unrelated to the legitimate operations and business of ExPro Midwest, including to pay for clothing, rent payments, automobile payments, cash withdrawals, and to pay for other personal day to day living expenses.

6.  It was a further part of the scheme that, on one and more occasions, defendant **FOX** issued checks on the ExPro Midwest operating bank account held at Citizens National Bank, without the knowledge and authority of ExPro Midwest and its owners, to a personal friend who was a joint owner of defendant **FOX's** personal bank account. Defendant **FOX** then deposited those unauthorized checks into that personal bank account. The total amount of those unauthorized checks was approximately $6,994.46. Defendant **FOX** used those unauthorized funds for her own personal use, unrelated to the legitimate business and operations of ExPro Midwest.

7.  It was a further part of the scheme that, on one and more occasions, defendant **FOX** used the ExPro Midwest American Express corporate credit card to make personal use purchases unrelated to the legitimate business and operations of ExPro Midwest. Defendant **FOX** then paid and caused to be paid the monthly ExPro Midwest American Express corporate credit card bills from the ExPro Midwest operating bank account held at Citizens National Bank, knowing that her unauthorized personal charges were contained in the billings. **FOX** did this without the knowledge and authority of ExPro Midwest or its owners. Defendant **FOX** made, and caused to be paid, approximately $50,000 in unauthorized charges on the ExPro Midwest American Express corporate credit card for such personal items as airline tickets, general retail items, groceries, clothing, and sporting goods.

8.  It was a further part of the scheme that, on one and more occasions, in order to conceal her scheme from ExPro Midwest, its owners, and its independent accounting firm, defendant **FOX** made false entries in the ExPro Midwest QuickBooks internal financial records, including in the Citizens National Bank ExPro Midwest operating account statement reconciliation. These entries falsely reflected that the unauthorized checks issued to **FOX** were purportedly issued to actual third party vendors doing business with ExPro Midwest. Defendant

**FOX** then transmitted these false QuickBooks financial records, including the false bank reconciliations, to ExPro Midwest's independent accounting firm Griffin, Delaney, Hillman & Lett in Ashland, Kentucky.

C. THE WIRES

### COUNT ONE

9.  On or about February 5, 2018, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, and representations, the defendant,

**TAMMY FOX**,

did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including an electronic mail transmission containing an ExPro Midwest QuickBooks reconciliation detail which contained false entries relative to several unauthorized checks issued to **FOX**, which electronic mail transmission was initiated by defendant at the offices of ExPro Midwest in St. Louis, Missouri, and transmitted by defendant via the internet to the offices of Griffin, Delaney, Hillman & Lett in Ashland, Kentucky.

In violation of Title 18, United States Code, Section 1343.

### COUNT TWO

10.  On or about January 7, 2016, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, and representations, the defendant,

**TAMMY FOX**,

did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including an electronic mail

transmission containing an ExPro Midwest QuickBooks reconciliation detail which contained false entries relative to several unauthorized checks issued to **FOX**, which electronic mail transmission was initiated by defendant at the offices of ExPro Midwest in St. Louis, Missouri, and transmitted by defendant via the internet to the offices of Griffin, Delaney, Hillman & Lett in Ashland, Kentucky.

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The United States Attorney further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in Counts One and Two, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is at least $420,000.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

5

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

JEFFREY B. JENSEN
United States Attorney

_____
HAL GOLDSMITH, #32984MO
Assistant United States Attorney